[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
November 5, 2008
THOMAS K. KAHN
CLERK

_____

No. 06-15514

_____

KENNY A., by his next friend Linda Winn,
KARA B., by her next friend Linda Pace, et al.,

Plaintiffs-Appellees,

versus

SONNY PERDUE, in his official capacity as
Governor of the State of Georgia,
DEPARTMENT OF HUMAN RESOURCES
OF THE STATE OF GEORGIA,  et al.,

Defendants-Appellants.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

ON PETITION FOR REHEARING EN BANC

(Opinion Issued July 3, 2008)

Before EDMONDSON, Chief Judge, TJOFLAT, ANDERSON, BIRCH,
DUBINA, BLACK, CARNES, BARKETT, HULL, MARCUS, WILSON and
PRYOR, Circuit Judges.

O R D E R:

The Court having been polled at the request of one of the members of the Court and a majority of the Circuit Judges who are in regular active service not having voted in favor of it (Rule 35, Federal Rules of Appellate Procedure; Eleventh Circuit Rule 35-5), the Suggestion of Rehearing En Banc is DENIED.

/s/ J. L. Edmondson
CHIEF JUDGE

WILSON, concurring in the denial of rehearing en banc.

I concur in the Court's denial of rehearing en banc only for the purpose of responding to the dissents that follow. I believe that existing precedent regarding the discretion afforded to district judges to calculate attorney's fee awards based on the longstanding lodestar analysis is clear, and not as confusing as the dissents attempt to make it out to be. Several decades of established Supreme Court precedent make it clear that district judges are vested with discretion to enhance a fee in accordance with a federal fee-shifting statute, in the "rare" and "exceptional" case, when there is specific evidence in the record to support an exceptional result and superior performance. *See Pennsylvania v. Delaware Valley Citizens, Council for Clean Air ("Delaware Valley I")*, 478 U.S. 546, 565, 106 S. Ct. 3088, 3098, 92 L. Ed. 2d 439 (1986); *Blum v. Stenson*, 465 U.S. 886, 104 S. Ct. 1541, 79 L. Ed. 2d 891 (1984).

In *Blum,* the Supreme Court held that the "quality of representation" and the "results obtained" from the litigation could not serve as an independent basis for increasing the basic fee award only because the attorneys in *Blum* offered *no evidence* of an exceptional result or superior performance. *Blum*, 465 U.S. at 899, 104 S. Ct. at 1549. That is not the case here. In *Blum*, the Court indicated that the outcome would have been different had the plaintiff's attorneys "offer[ed] specific

3

evidence" to demonstrate that an enhancement was necessary to reflect counsel's performance. *Id.* I find no language in *Blum* that can be interpreted to suggest that upward adjustments for excellent results or superior performance are categorically excluded. The Court stated that an upward adjustment may be justified in the "rare case where the fee applicant offers specific evidence to show that the quality of service rendered was superior to that one reasonably should expect in light of the hourly rates charged" and resulted in "exceptional" success. *Id.*

*Delaware Valley I* presented the Supreme Court with a clear opportunity to overrule *Blum,* but it did not expressly do so. Rather, the Court repeatedly cited *Blum* with approval. *See Delaware Valley I*, 478 U.S. at 564, 106 S. Ct. at 3098 ("We further refined our views [regarding the proper manner in which to determine a 'reasonable' attorney's fee] in *Blum* . . . f[inding] that [the lodestar] *is presumed* to be the reasonable fee . . . ."); *id.* at 568, 106 S. Ct. at 3100 (quoting *Blum*, 465 U.S. at 897, 104 S. Ct. at 1549) (leaving questions left open in *Blum* to be decided later). Additionally, the Supreme Court in *Delaware Valley I* echoed *Blum's* non-categorical language and conducted a case-specific analysis of the enhancement at issue. *See id.* at 566-68, 106 S. Ct. at 3099-3100.

Moreover, the Supreme Court affirmed in *Delaware Valley I* that "upward

4

adjustments of the lodestar figure are still permissible . . . in certain 'rare' and 'exceptional' cases, supported by both 'specific evidence' on the record and detailed findings by the lower courts." *Id.* at 565, 106 S. Ct. at 3098 (quoting *Blum*, 465 U.S. at 898-901, 104 S. Ct. at 1548-50). *See The Supreme Court, 1986 Term: Leading Cases*, 101 HARV. L. REV. 270, 293 (1987) (concluding that the *Delaware Valley I* Court "rejected the use of an enhancement based on superior attorney performance . . . absent specific evidence that the lodestar did not provide a reasonable award that reflected the quality of representation"). The dissents mischaracterize *Delaware Valley I* by ignoring this language, which precedes the Court's holding that "the lodestar figure includes most, if not all, of the relevant factors constituting a 'reasonable' attorney's fee, and it is unnecessary to enhance the fee for superior performance in order to serve the statutory purpose of enabling plaintiffs to secure legal assistance." *Id.* at 566, 106 S. Ct. at 3098. Although the Court is clear that "the overall quality of performance *ordinarily* should not be used to adjust the lodestar," the Court leaves open the possibility of an extraordinary case. *Id.* at 566, 106 S. Ct. at 3099 (emphasis added). Reading *Blum* and *Delaware Valley I* together, the Supreme Court has consistently indicated that, in the "rare" and "exceptional" case, the district court has the discretion to grant an enhancement.

5

Importantly, there is no circuit split on this issue. The Second, Fourth, Fifth, Sixth, Eighth, Ninth, Tenth, and Eleventh Circuits – all of the circuits that have considered this issue – agree that a district court may provide an enhancement for exceptional performance. *See Kenny A. v. Perdue*, 532 F.3d 1209, 1242 (11th Cir. 2008) (affirming a lodestar enhancement); *Geier v. Sundquist*, 372 F.3d 784, 794-95 (6th Cir. 2004) (concluding that *Delaware Valley I* permits enhancements based on quality of representation and results obtained in rare and exceptional cases); *Van Gerwen v. Guarantee Mut. Life Co.*, 214 F.3d 1041, 1046 (9th Cir. 2000) (stating that, as in *Blum* and *Delaware Valley I*, upward adjustment for quality of representation "is justified only in the rare case where there is specific evidence that the quality of service was superior in light of the hourly rates charged and that the success was exceptional"); *Quarantino v. Tiffany Co.*, 166 F.3d 422, 425 (2d Cir. 1999) ("The lodestar may be adjusted based on several factors, including in particular the results obtained . . . .") (internal quotation marks and citation omitted)); *Forshee v. Waterloo Indus., Inc.*, 178 F.3d 527, 532 (8th Cir. 1999) (stating that, to justify enhancement for outstanding service and results, the applicant "must establish that the quality of service rendered and the results obtained were superior to what one reasonably should expect in light of the hourly rates charged and the number of hours

6

expended") (internal quotation marks and citation omitted)); *Hyatt v. Apfel*, 195 F.3d 188, 192 (4th Cir. 1999) (affirming enhancement "on account of the exceptional results obtained . . ."); *Roe v. Cheyenne Mountain Conference Resort, Inc.*, 124 F.3d 1221, 1233 n.8 (10th Cir. 1997) ("The lodestar figure may be adjusted to suit the particular circumstances of the case, especially where the degree of success achieved is exceptional."); and, *Shipes v. Trinity Indus.,* 987 F.2d 311, 320 (5th Cir. 1993) (noting that upward adjustments based on quality of representation and results obtained are proper where supported by specific evidence on record and detailed findings by lower courts).

The discretion to enhance an attorney's fee is a tool uniquely within the province of the district judge. The district judge has an unparalleled opportunity to observe the attorney's performance in a given case. Only the district judge can evaluate the attorney's performance from the day he or she files the complaint to the day the judge enters the order. Before arriving at its decision in this case, the district judge set forth detailed findings to explain why the lodestar figure did not fully reflect the quality of representation and the results achieved.

Judge Tjoflat's dissent mischaracterizes the district court's observations and findings in its published order as "testimony." These findings and observations are simply explanations for the enhancement, provided because *Blum* and

7

*Delaware Valley II* require that an enhancement be justified. This is not a due process violation. The district judge explained that he was motivated to enhance by his "own substantial experience and familiarity with the prevailing rates in Atlanta, and the Court's observation of the stellar performance of plaintiffs' counsel throughout this long and difficult case," including the court's "58 years as a practicing attorney and federal judge." *Kenny A. v. Perdue*, 454 F. Supp. 2d 1260, 1286, 1290 (2006). The district judge is in the best position to evaluate trial level advocacy, and therefore is in the best position to identify when that advocacy is exceptional. Although we review the district court's decision for an abuse of discretion, we should afford the district court the deference and discretion to which it is entitled.

We need not disturb our precedents in *Norman v. Housing Auth. of Montgomery*, *NAACP v. Evergreen*, and *Kenny A.* because they are consistent with existing Supreme Court precedent. *Kenny A.*, 532 F.3d at 1242; *Norman v. Housing Auth. of Montgomery*, 836 F.2d 1292, 1302 (11th Cir. 1988); *NAACP v. Evergreen*, 812 F.3d 1332, 1336-37 (11th Cir. 1987) (per curiam). Our decisions are also consistent with every other Circuit that has considered whether, and to what extent, exceptional performance and results can be used to enhance an attorney's fee under the lodestar calculation. The Supreme Court has instructed

8

that a district judge should only do so in an exceptional case when there is specific evidence to support it.  *Kenny A.* is that case.

TJOFLAT, Circuit Judge, dissenting from the denial of rehearing en banc:

In this case, the district judge, in undertaking the task of awarding attorney's fees to the prevailing plaintiffs under a federal fee-shifting statute, 42 U.S.C. § 1988,[1] decided to testify on behalf of the plaintiffs and did so <u>ex parte</u>, without notice to the defendants, in the form of statements made in the order he entered granting plaintiffs the fees they requested.[2] Based on these statements – in which he compared plaintiffs' counsel's performance and the comprehensiveness of the injunction the court entered with other cases that he declined to identify – the judge enhanced plaintiffs' fee request by a multiplier of 1.75. <u>Kenny A. ex rel. Winn v. Perdue</u>, 454 F. Supp. 2d 1260 (N.D. Ga. 2006) ("<u>Kenny A. III</u>"). On appeal, the panel accepted the judge's statements as probative evidence of the

---

[1] Plaintiffs' amended complaint, the pleading that contained all of the claims for relief, contained 18 counts, 15 of which stated causes of action. Nine of the counts sought relief under the Georgia constitution, Georgia statutes, or common law. Six of the counts sought relief under 42 U.S.C. § 1983 for violations of the United States Constitution or federal statutes. Section 1988 applied only to those six counts. The consent decree the court signed does not indicate whether the decree was based on state or federal law. I assume that it was based on one or more of the § 1983 counts. In granting plaintiffs attorney's fees under § 1988, neither the parties nor the court appeared to have segregated out the time plaintiffs' counsel spent litigating the state law causes of action. Rather, they assumed that all of the time for which plaintiffs' counsel asked to be compensated dealt with the § 1983 claims. In extolling counsel's performance as far superior to anything he had witnessed in his 27 years on the district court, the district judge did not comment on, and apparently did not take account of, counsel's performance in prosecuting plaintiffs' state law claims.

[2] It is clear from a reading of the district judge's order granting plaintiffs' attorney's fees request that the district judge served as plaintiffs' witness. He provided the testimony that was critical and essential to the fee enhancement. See <u>Kenny A. ex rel. Winn v. Perdue</u>, 454 F. Supp. 2d 1260, 1288-90 (N.D. Ga. 2006).

10

quality of counsel's performance and the result plaintiffs achieved,[3] and, concluding that it was bound by precedent, NAACP v. City of Evergreen, 812 F.2d 1332 (11th Cir. 1987) (per curiam), and Norman v. Housing Auth. of the City of Montgomery, 836 F.2d 1292 (11th Cir. 1988), upheld the 1.75 fee multiplier. See Kenny A. ex rel. Winn v. Perdue, 532 F.3d 1209, 1236-37 (11th Cir. 2008) ("Kenny A. IV"); id. at 1246 (Wilson, J., specially concurring); id. at 1251 (Hill, J., concurring). In my view, neither NAACP nor Norman compelled the result the panel reached, nor, as Judge Carnes's panel opinion argues, should they have.

I dissent from the court's failure to take this case en banc. In light of the numerous fee-shifting statutes that Judge Carnes has cited in the appendix to his dissenting opinion, the panel's reading of NAACP and Norman, which I believe goes beyond the cases' holdings, will control the litigation of attorney's fees issues in this circuit. But there are reasons other than the panel's reading of NAACP and Norman that require the full court's attention en banc – reasons independent of those Judge Carnes advances.

---

[3] Judge Carnes authored the panel's majority opinion; however, part VI of the opinion, 532 F.3d at 1220-42, which addressed the district court's fee enhancement, represented his views alone. Kenny A. ex rel. Winn v. Perdue, 532 F.3d 1209, 1220 n.3 (11th Cir. 2008). Judge Hill, who joined the remainder of Judge Carnes's opinion, voted to affirm the fee enhancement solely "because we are bound" by NAACP and Norman. Id. at 1251 (Hill, J., concurring). None of the three panel opinions referred to the district judge's statements as testimony given ex parte and without notice or questioned whether those statements were unreviewable. Yet the panel necessarily accepted the statements as probative evidence; otherwise, the panel could not have reached the result it did.

11

If my reading of NAACP and Norman, as set out in part I, is correct, the district court's decision should be vacated and the case remanded to the district court. I would vacate the court's decision on two independent grounds: (1) the decision is unreviewable; and (2) the manner in which the court used its own testimony to enhance plaintiffs' attorney's fees request denied the defendants due process of law.

If my reading of NAACP and Norman is wrong, and their holdings required the panel to affirm, en banc review is still necessary to determine whether – in a case seeking the sort of injunctive relief plaintiffs sought and obtained in this case – quality of performance and the result obtained are permissible grounds for enhancing a lodestar fee that already incorporates an hourly rate at the top of the relevant market for the type of services performed. I contend in part III that an enhancement on these grounds is not available in cases like the one before us.

I.

In NAACP, we vacated and remanded the district court's decision refusing to grant an attorney's fee enhancement. We did so due to ambiguities in the district court's stated bases for denying the enhancement and the court's failure to address plaintiffs' "exceptional success" justification for a fee enhancement. NAACP, 812 F.2d at 1336-37. In Norman, we reversed and remanded the district

12

court's refusal to enhance the attorney's fee award because the court used the wrong standard in assessing the significance of the results the plaintiffs had obtained. Norman, 836 F.2d at 1306.

While we did assume in those cases that, at least theoretically, "superior results coupled with superior performance can be the basis for an enhancement of the lodestar amount," Kenny A. IV, 532 F.3d at 1238 (emphasis added), in neither case did we hold that fee enhancements granted on those grounds must be affirmed. We certainly did not hold that a district court would not be abusing its discretion if it enhanced an attorney's fee award on the basis of exceptional performance or result, particularly where, as here, the court relied almost exclusively on unidentified and unreviewable personal experience, rather than specific evidence in the record, in reaching its determination. See Blum v. Stenson, 465 U.S. 886, 899, 104 S. Ct. 1541, 1549, 79 L. Ed. 2d 891 (1984) (requiring "specific evidence" to support an enhancement based on superior service and exceptional success). If, as Judge Carnes's panel opinion "readily" concluded, "the district court's award of a $4,500,000 enhancement to the lodestar amount in this case is an abuse of discretion," then NAACP and Norman present no impediment to vacating the fee award. Kenny A. IV, 532 F.3d at 1236.

Because, however, the panel relied on the supposedly preclusive effect of

13

NAACP and Norman, the panel gave those decisions greater precedential value than they deserve, by their own terms, in the future review of fee enhancements. Should the panel's decision stand, there would be almost no room for a panel of this court to find that a district court abused its discretion in granting a fee enhancement on the basis of the lawyer's purportedly superior performance or the result attained. For this reason alone, we should hear this case en banc to clarify and limit the reach of NAACP and Norman so that future courts will not mistakenly find their precedential effect so constraining.

## II.

If my reading of NAACP and Norman is correct, the district court's decision should be vacated and the case remanded to the district court. As I explain in subparts A and B, the decision is unreviewable and is the product of the denial of due process of law.

## A.

The district court's decision to enhance the lodestar in this case through the use of a multiplier of 1.75 ultimately was driven by the court's personal experience and subjective relative assessment of the lawyers' performance.[4]

_____

[4] The district court also purported to rely on the following factors as evidence that the lodestar calculation failed to account for the quality of service rendered by plaintiffs' counsel: (1) that counsel were required to advance case expenses of $1.7 million with no ongoing reimbursement; (2) that counsel were not paid on an ongoing basis as the work was performed;

14

Specifically,

> based on its <u>personal observation</u> of plaintiffs' counsel's performance
> throughout this litigation, the Court [found] that the superb quality of
> their representation <u>far exceeded what could reasonably be expected</u>
> <u>for the standard hourly rates</u> used to calculate the lodestar.  Quite
> simply, plaintiffs' counsel brought a higher degree of skill,
> commitment, dedication, and professionalism to this litigation than
> the Court has seen displayed by the attorneys <u>in any other case</u> during
> its 27 years on the bench.[5]

<u>Kenny A. III</u>, 454 F. Supp. 2d at 1288-89 (emphasis added).  Along similar lines,

the district court commented that "the quality of service rendered by class counsel

. . . was far superior to what consumers of legal services in the legal marketplace

in Atlanta could reasonably expect to receive for the rates used in the lodestar

---

and (3) that counsel's ability to recover any fee or expense reimbursement was contingent on the outcome of the case.  <u>Kenny A. III</u>, 454 F. Supp. 2d at 1288.  Judge Carnes, correctly in my view, noted why none of these factors are legally permissible bases for a fee enhancement.  <u>Kenny A. IV</u>, 532 F.3d at 1225-28 (relying on <u>Pennsylvania v. Del. Valley Citizens' Council for Clean Air</u>, 478 U.S. 546, 106 S. Ct. 3088, 92 L. Ed. 2d 439 (1986), and <u>City of Burlington v. Dague</u>, 505 U.S. 557, 112 S. Ct. 2638, 120 L. Ed. 2d 449 (1992)).  This leaves the district court's personal views of plaintiffs' counsel's performance and the result plaintiffs obtained as the only remaining bases for the enhancement.  <u>Id.</u> at 1228-29.

[5] The district court's lodestar enhancement surely cannot stand to the extent that it was based on counsel's "commitment, dedication, and professionalism" displayed in the litigation.  These attributes are <u>always</u> required of officers of the court, and attorneys should never be compensated – let alone compensated <u>extra</u> – merely for comporting themselves in a manner expected of all members of the bar, regardless of the fee charged for their services.  <u>See, e.g.</u>, Ga. State Bar R. & Regs., Rule 4-102, Rules of Prof'l Conduct, Preamble & Rules 1.1 (Competence), 1.3 (Diligence), 3.1 (Meritorious Claims and Contentions), 3.2 (Expediting Litigation), 3.3 (Candor Toward the Tribunal), 3.4 (Fairness to Opposing Party and Counsel), 3.5 (Impartiality and Decorum of the Tribunal); <u>see also</u> LR 83.1(C), NDGa ("All lawyers practicing before this court shall be governed by and shall comply with the specific rules of practice adopted by this court and, unless otherwise provided, with the Georgia Rules of Professional Conduct contained in the Rules and Regulations of the State Bar of Georgia and with the decisions of this court interpreting these rules and standards.").

calculation." Id. at 1288. The court further opined "that plaintiffs' success in this case was truly exceptional." Id. at 1289. Indeed, the court continued, "[a]fter 58 years as a practicing attorney and federal judge, the Court is unaware of any other case in which a plaintiff class has achieved such a favorable result on such a comprehensive scale." Id. at 1290.

The district judge arrived at the fee enhancement by comparing counsel's performance and the result obtained in this case with the attorneys' performance and the result plaintiffs obtained in other cases. The court did not identify the other cases, the comparators, but I assume that they were cases over which the district judge presided and that they were class actions in which the plaintiffs sought equitable relief as sweeping, or nearly so, as what plaintiffs sought in this case. Indulging this assumption, the judge's statements regarding the quality of counsel's representation and the result plaintiffs achieved invite a multitude of questions, none of which the judge answered, including:

- What quality of representation would "consumers of legal services in the legal marketplace in Atlanta" have expected to receive for the rates used in the lodestar the district judge fixed in this case?

- What cases was the district judge using as comparators? Were they cases in which the attorneys claimed a far lower fee? (If so, counsel

16

in this case should have been expected to bring "a higher degree of skill" to their task in order to earn the higher requested hourly rate.)

- What definition of "success" did the court use?

- What level of success did plaintiffs' counsel achieve in the comparators? Assuming that the level of success they achieved was lower than what counsel achieved in this case, why was it so?

The district judge provided no clue as to the answers to these questions. Accordingly, the critical portions of the record for review – the specific evidentiary facts on which the decision turned – do not exist. It is well-established that "no enhancement is permissible unless there is <u>specific evidence in the record</u> to show that the quality of representation was superior to that which one would reasonably expect in light of the rates claimed." <u>Norman</u>, 836 F.2d at 1302 (citing <u>Blum</u>, 465 U.S. at 899, 104 S. Ct. at 1549) (emphasis added). A district judge's mental impressions that are based on unknown facts cannot be reviewed.[6]

B.

---

[6] While we have previously suggested that a district judge may base a fee enhancement decision on his own knowledge and experience, <u>see</u> <u>Norman</u>, 836 F.2d at 1303, this option, even if properly available, does not relieve the judge of the obligation of identifying on the record the specific facts supporting the enhancement decision, <u>see</u> <u>Blum</u>, 465 U.S. at 899, 104 S. Ct. at 1549 (requiring "specific evidence" to support an enhancement based on superior service and exceptional success). Here, the district judge relied only on generalized, conclusory findings, keeping the factual premises of those findings locked away inside his personal recollection, shielded from challenge or appellate review. Such conclusions are insufficient to support an enhancement.

17

The district judge provided the critical evidence that plaintiffs needed to obtain an enhancement of the lodestar that they proposed and that the court accepted as full compensation for services rendered. The evidence was testimonial and was given ex parte and without notice to the defendants.[7] In arriving at his fee-award decision in this manner, the judge denied defendants fundamental due process of law. "[I]t is not proper to admit ex parte evidence, given by witnesses not under oath and not subject to cross-examination by the opposing party." Hornsby v. Allen, 326 F.2d 605, 608 (5th Cir. 1964).[8] The district judge was required to afford defendants the right of cross-examination and, depending on what cross-examination might disclose, an opportunity to put on

_____

[7] I have not overlooked the possibility that the district judge, in comparing the quality of counsel's performance and the result plaintiffs attained with the quality of attorney performance and the result attained in the comparator cases, was effectively taking judicial notice of the quality of performance and result in those other cases. If that is what the judge was doing, it is no less troubling than his ex parte testimony is.

First, "[a] judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Clearly, the issues here are subject to reasonable dispute, and the accuracy of the court's determination of the relative merits of plaintiffs' counsel's performance and the result as compared to other cases can be, and have been, questioned. Second, the district judge afforded the defendants no opportunity to be heard, as required by Fed. R. Evid. 201(e), "as to the propriety of taking judicial notice and the tenor of the matter noticed." In sum, not only were the facts of which the judge may have taken judicial notice not proper subjects of such notice, but the court denied the defendants the procedural protections guaranteed by the rules of evidence.

[8] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), this court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

18

rebutting evidence.[9]  It is obvious to me that the  district judge failed to

comprehend the due process implications of what he was doing.  Had he been

aware of those implications, he would have been faced with two choices:  he could

(1) announce his intent to testify as a plaintiff's witness; or (2) put aside his

personal opinion of counsel's performance and the result attained and, instead,

point to other specific evidence in the record as the bases for his attorney's fees

decision.

The first choice would have required his recusal from the case.  When a

_____

[9]  In theory, defendants could have exercised their right of cross-examination had they moved the court pursuant to Fed. R. Civ. P. 59 for a new trial.  Rule 59(a)(2) provides,

> ***Further Action After a Nonjury Trial.***  After a nonjury trial, the court may, on motion for a new trial, open the judgment if one has been entered, take additional testimony, amend findings of fact and conclusions of law or make new ones, and direct the entry of a new judgment.

An attorney's fee hearing under a fee shifting statute is essentially a nonjury trial limited to the issue of fees.  Therefore, Rule 59(a)(2) provides a mechanism by which a defendant, ambushed by previously-undisclosed judicial testimony in the dispositive fee order, could obtain a re-opening of the proceedings in order to cross-examine the new witness (the judge), introduce rebuttal evidence if necessary, and obtain new findings of fact and conclusions of law on the basis of a record so augmented.  If the judge granted the Rule 59(a)(2) motion, the defendant would no doubt follow with a motion for recusal unless the judge recused sua sponte.  Whether a defendant in a case such as the one at hand must resort to Rule 59(a)(2) relief in order to preserve its argument that the court's utilization of its own ex parte testimony, given without notice, operated as a denial of due process is open to question.  I would answer the question in the negative for two reasons:  (1) a motion for a new trial is not a prerequisite for the direct appeal of the attorney's fees decision; therefore, such a motion is not necessary to preserve the due process issue this case presents; and (2) the scenario associated with processing the new trial motion would likely be unpleasant.  In this case, defendants have not asserted the denial of due process as a basis for disturbing the district court's attorney's fees decision.  The issue is, however, inextricably intertwined with the question of whether the court's decision is unreviewable for the reasons I have posited, and defendants were not required to assert in their principal brief that the decision under review is unreviewable.  Unreviewability is a matter the court of appeals notices on its own initiative.

19

judge becomes a material witness in a case over which he is presiding, he must

recuse and let another judge take over. The judicial disqualification statute

provides, in pertinent part, as follows:

> (a) Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.
> (b) He shall also disqualify himself in the following circumstances:
>> (1) Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding;

28 U.S.C. § 455(a), (b)(1). Where, as here, the district judge feels compelled to

testify – here as a plaintiff's witness – to his personal knowledge and experience,

the judge clearly has, and has chosen to offer, "personal knowledge of disputed

evidentiary facts concerning the proceeding." Id. § 455(b)(1). Whether, in

addition, the judge actually has a personal bias or prejudice in favor of the party

whom his testimony benefits is less clear, although the judge's opinion here is

replete with unrestrained and glowing praise for plaintiffs' counsel, suggesting a

distinct possibility of such bias or prejudice. But, by testifying on behalf of a

party, there is little doubt that, at a minimum, the judge's impartiality might

reasonably be questioned. Id. § 455(a). In such a circumstance, the need for

recusal is clear.

III.

20

In this part, I assume that my reading of NAACP and Norman is wrong and that their holdings required the panel to affirm the enhancement of the lodestar by a multiple of 1.75. En banc review would still be necessary to explore the proposition that quality of performance and result may be employed in a class action brought under Rule 23(b)(2) of the Federal Rules of Civil Procedure to enhance a lodestar already reflecting an hourly rate prevailing at the top of the relevant market. I contend that neither factor would be an appropriate basis for an enhancement. I consider first the result reached, then the quality of performance.

## A.

Aside from the procedural deficiencies associated with the lodestar enhancement in this case, it appears to me that an attorney's fee enhancement based on "exceptional" or "superior" results can never be appropriate in a class action, like this one, in which plaintiffs sought sweeping equitable relief.[10] Assuming that a court sitting in equity properly discharges its function in entering a just and legally appropriate injunction, whether following a bench trial or after

---

[10] Comparing class actions seeking equitable relief, as in this case, with class actions seeking money damages is like comparing apples and oranges. In granting equitable relief, the district court is concerned with whether the injunction it enters is narrowly tailored to provide only such relief as is necessary to prevent the future repetition of the legal wrong the court has found and whether the injunction is enforceable through the court's contempt power. In approving the settlement of a damages action, the court is not faced with those concerns. Rather, its concern is with the fairness of the settlement to all parties. In a money damages case, once the settlement is approved, the court is no longer involved.

consideration of a consent decree crafted by the parties, there can be but one qualitative result; in no such case can one result be any more "exceptional" than, or "superior" to, another.

In any case in equity, such as the Rule 23(b)(2) class action at hand, the judge, sitting as a chancellor, has an obligation to do justice under the circumstances. See Coral Springs Street Sys., Inc. v. City of Sunrise, 371 F.3d 1320, 1340 (11th Cir. 2004) ("It is a bedrock principle of courts of equity that they may impose the substantive remedy of injunctive relief only when fundamental fairness and justice demand it." (emphasis in original)). The court can reach its judgment in one of two ways. It can hold a nonjury trial, in which case the court has all of the evidence before it and the opportunity to engage the witnesses and the attorneys in an effort to muster the information necessary to fashion an appropriate injunction. Alternatively, the court can enter a consent decree, in which case it must rely heavily on the competence of counsel to craft a legally appropriate injunction.

Under either approach – a bench trial or a consent decree – the court's obligation is the same. First, the final judgment must be fair and just under the circumstances. Second, because the decree will be enforced through the court's civil contempt power, the decree's injunctive provisions must be enforceable,

22

meaning capable of feasible enforcement. To the extent they are not, the provisions should not be entered, as the issuance of an injunctive order that cannot be enforced breeds disrespect for the rule of law. Thus, in considering whether to enter a consent decree, a court must ask itself the same questions it would ask in assessing the adequacy and propriety of its own order after finding for the plaintiffs at the end of a bench trial: Are the injunctive provisions to be entered not only fair and just under the circumstances, but are they also capable of enforcement through the court's civil contempt power? Do they reach only as far as is necessary to right the wrong, to give the plaintiffs the relief to which they are legally entitled but not more? Are they tailored as narrowly as is necessary to effect the appropriate relief?

This evaluative rubric will produce one of three qualitative assessments: (1) the order will do justice and give the plaintiffs what the law allows; (2) the order will give the plaintiffs more relief than the law allows, which is plainly improper;[11]

---

[11] If, in a given case, a proposed consent decree would afford the plaintiffs a level of relief greater than they would be entitled to receive under a decree the court would fashion – because the consent decree would give the plaintiffs more than the law would allow – the district court should not approve the decree. In the case before us, the district court indicated that the consent decree may have provided plaintiffs with more than the law would allow. See Kenny A. III, 454 F. Supp. 2d at 1289-90 ("Indeed, the Court has previously recognized that even if plaintiffs had prevailed in a trial of this case, it is doubtful that they would have obtained relief as 'intricately detailed and comprehensive' as that contained in the Consent Decree."); see also Kenny A. IV, 532 F.3d at 1230 ("To the extent that the district court rewarded plaintiffs' counsel with an enhancement for obtaining better results than the class would have received had the case been resolved on the merits, that is plainly wrong. . . . [T]he fee shifting statutes are not designed

23

or (3) the order will provide less relief than the law allows, which would be unconscionable and unjust. Every entered injunctive order or decree should fall into the first category; a court should never enter an order or approve a consent decree falling into the second or third category. Accordingly, in any given equitable case, there can be but one legally proper result.

In this case, we must assume that the consent decree approved by the district court was prepared by competent counsel on both sides and was crafted to be just and legally appropriate under the circumstances, affording the plaintiff class no more and no less than that to which it was legally entitled. Were this not the case, the district court would not – and should not – have approved it. It is against this necessary background assumption that we must review whether the result the consent decree provided could ever be deemed "exceptional" or "superior" relative to the result the district court would have fashioned had it tried the case or the results reached in other comparable cases. As a matter of law and logic, it cannot.

_____

to provide representation that will win plaintiffs more than a correct application of substantive and remedial law entitles them to receive. . . . To put it in an either-or manner, superb results are either what a fair application of the law produces, which means that they are not truly 'superb,' or they are results that exceed what the law allows and for that reason are beyond the purpose of the fee-shifting statutes."). Thus, no fee award, whether or not enhanced beyond an appropriately-calculated lodestar, should ever exceed fair market compensation for obtaining the maximum level of relief to which the client is legally entitled. Applied to the present context, if any of the unidentified comparator cases contemplated by the district court involved (1) receipt by plaintiffs of all the relief allowed by law, yet (2) no lodestar enhancement of the attorney's fees, then the lawyers here, who necessarily provided their clients no more "exceptional" a result, should not do any better in terms of fees on the basis of the result obtained in the litigation.

24

"Exceptional" has been defined as "constituting, or occurring as, an exception; not ordinary or average; esp., much above average in quality, ability, etc." Webster's New World Dictionary 473 (3d college ed. 1988). "Superior" means "greater in quality or value than . . . above average in quality; excellent." Id. at 1344. The result in one case can only be deemed "exceptional" or "superior" in relation to the result the district judge would have fashioned had he tried the case to a conclusion or the result he approved or fashioned in an appropriate comparator case. A proper comparator case in this situation would be another Rule 23(b)(2) class action seeking equitable relief.[12]

However, assuming, as we must, that a comparator case involved an order or consent decree whose injunctive provisions both (1) were fair and just under the circumstances, affording the plaintiffs all the relief to which they were legally entitled but no more, and (2) were feasibly enforceable, it is hard to see how the result in this case could be qualitatively "superior" or "exceptional." Indeed, were a district court to have found the result in the case before it to be "exceptional" or "superior" relative to comparator cases, it necessarily would have to conclude that

[12] The ideal comparators in this case would also involve broad injunctive remedies in which the court placed numerous affirmative obligations on governmental service bureaucracies. However, because all injunctive relief, no matter how sweeping or detailed, must meet the same equitable criteria and any such case can have but one legally-appropriate result, the inexorable conclusion that no properly-crafted injunctive remedy can be any more "exceptional" than or "superior" to the next applies regardless of what type of equity case serves as the comparator.

the injunctions in the other cases were unconscionable, unjust, or unenforceable and, ipso facto, should never have been entered.

In this case, in which the district judge presumably relied on comparator cases from his own body of judicial experience, his finding that the result in this case was "exceptional" and "superior" enough to justify a fee enhancement implicitly denigrates his own prior judgments by suggesting that they failed to satisfy the standard for proper equitable relief and that he never should have entered them. I am unwilling to assume that the district judge erred in deciding those prior cases – nor could I reach such a conclusion in any event because, as the district judge has not disclosed which other cases he was considering, I have no way to know which decisions to evaluate. Therefore, I have to assume that the injunctive relief awarded in the comparator cases was every bit as just, fair, and enforceable as the relief in this case and, accordingly, no less "exceptional."

The upshot is that, in the context of equitable relief, no properly-crafted injunction can be more "exceptional" than or "superior" to any other. As such, it can never be appropriate to enhance the attorney's fees in a case seeking injunctive relief on the basis of "exceptional" or "superior" results.

B.

In light of what the Supreme Court has said regarding the proper

26

composition and function of the lodestar,[13] I am convinced that the district court was precluded from enhancing the admittedly adequate lodestar on the basis of counsel's performance. "[T]he lodestar figure includes most, if not all, of the relevant factors constituting a 'reasonable' attorney's fee, and it is unnecessary to enhance the fee for superior performance in order to serve the statutory purpose of enabling plaintiffs to secure legal assistance." Pennsylvania v. Del. Valley Citizen's Council for Clean Air, 478 U.S. 546, 566, 106 S. Ct. 3088, 3098, 92 L. Ed. 2d 439 (1986). The lodestar is normally already assumed to account for the difficulty and cost of the case and the performance rendered by the attorney. The proper way to account for attorney performance is in setting the hourly rate, not in enhancing the lodestar.

In the case at hand, however, there is evidence that, in calculating the lodestar, the district court used hourly rates already at the top of the relevant

---

[13] Judge Carnes's panel opinion canvasses, accurately I believe, the Supreme Court's pronouncements about the composition and function of the lodestar. See Kenny A. IV, 532 F.3d at 1220-24. In a nutshell, the Court has long advised that the lodestar – the "product of reasonable hours times a reasonable rate" – "is presumed to be the reasonable fee contemplated by [42 U.S.C. ] § 1988." Blum, 465 U.S. at 897, 104 S. Ct. at 1548. The Court has further emphasized that "[a] strong presumption that the lodestar figure . . . represents a 'reasonable' fee is wholly consistent with the rationale behind the usual fee-shifting statute." Del. Valley, 478 U.S. at 565, 106 S. Ct. at 3098 (emphasis added). In addition, fee shifting statutes "were not designed as a form of economic relief to improve the financial lot of attorneys . . . . Instead, the aim of such statutes was to enable private parties to obtain legal help in seeking redress for injuries resulting from the actual or threatened violation of specific federal laws." Id. In other words, the lodestar is intended to provide full compensation for the legal services rendered, but no more than that.

market for the type and character of legal services performed. Neither the Supreme Court nor this court has addressed the question of whether a performance-based fee enhancement may push the lodestar hourly rate above the upper end of the prevailing market rate. If it may, then the resulting lodestar would yield a fee higher than necessary to serve the purposes of the fee shifting statutes – fairly compensating attorneys for the work performed, but only at a rate high enough to ensure their clients' access to legal services. Therefore, I believe that a lodestar hourly rate that is already at the top of the relevant market is simply ineligible for an additional enhancement.

A fee enhancement might conceivably be appropriate where an attorney quotes his client an hourly rate at the outset of the case, and later submits that rate to the court as his reasonable rate, yet that hourly rate ultimately proves to be insufficient in light of what the case in fact required the attorney to do.[14] Perhaps in the beginning the attorney did not accurately predict or appreciate how much time or effort the case would require, the level of resources he would have to devote, or the complexity of the issues that would arise. In short, an attorney who finds himself in over his head, stuck with an inadequate hourly rate, may be able to

---

[14]  I assume a case in which the requested hourly rate was somewhere below the top of the relevant market and even the enhanced hourly rate would not exceed an hourly rate prevailing at the upper end of the market.

28

warrant relief in the form of a fee enhancement in order to obtain full and fair compensation for the work actually performed.

The situation is very different, however, when, as should more typically be the case, the attorney does not request an hourly rate until the end of the litigation and the submission of the fee application. At this stage, the attorney already knows how much time, skill, effort, and expense he has devoted to the case. With this knowledge, he is able to determine the combination of hours and hourly rate that will compensate him adequately for his services, in light of the results obtained and the prevailing rates in the relevant market for comparable legal services. Attorneys know how to value their own services, and this fully compensatory rate is the one that the attorney should request. Having already included every factor properly bearing on compensation – including the degree of the attorney's performance and the results obtained in the litigation – there is no need or justification for an enhancement on top of this. Anything over and above this fully and fairly compensatory fee, to be candid, could only be the product of the attorney's greed or the judge's favoritism. Neither ground is, or should be, permitted under the fee shifting statutes or sanctioned by this court.

## IV.

I conclude where I began. The court ought to rehear this case en banc for

reasons aplenty.

CARNES, Circuit Judge, dissenting from the denial of rehearing en banc, in which TJOFLAT and DUBINA, Circuit Judges, join:

Although I have been on the short end of en banc votes before, this is the first time in sixteen years on the bench that I have written, or even joined, a dissent from the denial of rehearing en banc. I take this unusual step to explain why I believe that in this case "a United States court of appeals has decided an important question of federal law that has not been, but should be, settled by [the Supreme] Court." Sup. Ct. R. 10(c).

The important, unresolved question this case presents is one that affects the proper application of at least one hundred federal fee-shifting statutes that allow the prevailing party to recover a reasonable attorney's fee from the losing party. In arriving at an attorney's fee award, a district court calculates a lodestar amount by multiplying the reasonable number of hours worked, which reflects the difficulty of the case, by an hourly rate that fully reflects the attorney's skill and experience. See Penn. v. Del. Valley Citizens' Council for Clean Air, 478 U.S. 546, 563, 106 S. Ct. 3088, 3097 (1986); Hensley v. Eckerhart, 461 U.S. 424, 433, 103 S. Ct. 1933, 1939 (1983). The question is whether a district court can then increase the award beyond that reasonable amount based on its finding that the attorney's performance was of superior quality and the results achieved were exceptional.

31

My court of appeals has answered that question "yes" in this case by affirming the district court's judgment, which included a $4.5 million enhancement based on a number of factors, the most important of which were what the district court found to be superior performance and exceptional results. Kenny A. ex rel Winn v. Perdue, 532 F.3d 1209, 1218 (11th Cir. 2008) (majority opinion);[1] id. at 1225, 1242 (Carnes, J., concurring); id. at 1247, 1249 (Wilson, J., concurring); id. at 1251 (Hill, J., concurring); see also Kenny A. ex rel Winn v. Perdue, 454 F. Supp. 2d 1260, 1288–90 (N.D. Ga. 2006). The performance and results component was so important to the district court's enhancement decision that we declined to vacate and remand the enhancement on other grounds, concluding that it would be futile to do so given the primacy of that component. Id. at 1242 (Carnes, J., concurring) (recognizing that the district court improperly took contingency and other factors into account but explaining that it would be futile to remand on those grounds because "[t]he district court was so obviously enamored with the performance of plaintiffs' counsel and with the result that they achieved, and so determined to reward them for it, that we have no doubt the court

[1]Judge Hill joined Parts I–V and VII of the lead opinion, which I authored, making those parts a majority opinion. See id. at 1220 n.3. Neither he nor Judge Wilson joined Part VI of the lead opinion, and for that reason I refer to it as a concurring opinion by me. Although Part VI of the lead opinion is not part of the majority opinion, the pronoun "we" was used throughout it for continuity purposes.

would simply reinstate the enhancement"); see also id. at 1242, 1248 (Wilson, J., concurring) (agreeing that the district court should not have considered the contingency factor in making its enhancement decision but voting to affirm the full amount of the enhancement anyway).

Two of the three judges on the panel voted to affirm the multi-million dollar enhancement part of the fee award in this case because they were bound to follow established circuit law that a district court may take a reasonable attorney's fee award and enhance it for what the court views as extraordinary performance and results. Id. at 1236–38 (Carnes, J., concurring); id. at 1251 (Hill, J., concurring); see generally Norman v. Hous. Auth. of Montgomery, 836 F.2d 1292, 1302 (11th Cir. 1988); NAACP v. City of Evergreen, 812 F.2d 1332, 1336–37 (11th Cir. 1987). The third judge on the panel voted to affirm the enhancement both because binding circuit law permits it and because he reads Blum v. Stenson, 465 U.S. 886, 104 S. Ct. 1541 (1984), as "establish[ing] that enhancements for quality of representation and exceptional results, while not warranted in most cases, are permissible where supported by specific evidence." Kenny A., 532 F.3d at 1243, 1246 (Wilson, J., concurring).

The Supreme Court speculated on this issue in the Blum case, but the facts did not present it. There was no specific evidence in that case to support the

33

district court's conclusory findings that, among other things, the quality of legal services was superior to what one should reasonably expect and that the results obtained were exceptional.  Blum, 465 U.S. at 898–99, 104 S. Ct. at 1548–49.

The Court reversed the enhancement in the Blum case.  Id. at 902, 104 S. Ct. at 1550.  Therefore, what the Blum decision establishes, and all that it establishes, is that absent specific evidence and findings an enhancement for the quality of representation or results obtained is not permitted.  See id. at 901–02; 104 S. Ct. at 1550; see also Kenny A., 532 F.3d at 1221–22 (Carnes, J., concurring).

The Blum case does not establish as law the proposition that with specific evidence and findings an enhancement for superior representation and exceptional results is permissible.  It could not.  A decision in a case where  particular facts are not present cannot establish the law governing cases where those facts are present.  Any statements, and certainly any implications from statements, in the Blum opinion about what might have been the result if the facts had been different are nothing more than dicta.  See Cohens v. Virginia, 6 Wheat. 264, 399-400, 19 U.S. 264 (1821) ("It is a maxim not to be disregarded, that general expressions, in every opinion, are to be taken in connection with the case in which those expressions are used.  If they go beyond the case, they may be respected, but ought not to control

34

the judgment in a subsequent suit when the very point is presented for decision.")

(Marshall, C.J.); United States  v. Santos, 553 U.S.___, 128 S. Ct. 2020, 2031

(2008) (plurality opinion) (speculations that address a case not before the Court

"are the purest of dicta");  Parents Involved in Cmty. Schs. v. Seattle Sch. Dist.

No. 1, 551 U.S. —, 127 S. Ct. 2738, 2762 (2007) (plurality opinion); Cent. Va.

Cmty. Coll. v. Katz, 546 U.S. 356, 363, 126 S. Ct. 990, 996 (2006).[2]

---

[2] There is this passage in the Blum opinion:

> [W]e reiterate what was said in Hensley: "where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee.  Normally this will encompass all hours reasonably expended on the litigation, and indeed in some cases of exceptional success an enhancement award may be justified."  Hensley, 461 U.S., at [435], 103 S. Ct., at 1940. We therefore reject petitioner's argument that an upward adjustment to an attorney's fee is never appropriate under § 1988.

Blum, 465 U.S. at 901, 104 S. Ct. at 1550 (footnote omitted).  The speculative "may  be" language is "the purest of dicta," Santos, 128 S. Ct. at 2801 (plurality opinion), because the enhancement in Blum was reversed instead of affirmed.  The quote from Hensley is itself the purest of dicta because that case involved the reduction of an attorney's fee award for partial success, not the enhancement of one for more success than was expected.  Hensley, 461 U.S. at 426, 103 S. Ct. at 1935–36.

For what it is worth, I agree with the literal statement in the dicta of the last sentence of the quote from Blum, which rejects the argument that an upward adjustment of a fee award is never appropriate.  While I believe that enhancements are never appropriate for superior performance and exceptional results, see Kenny A., 532 F.3d at 1220–42 (Carnes, J., concurring), they may well be appropriate in other situations, especially those involving unpopular clients or causes where the attorney suffers from the representation in ways not compensated by the lodestar, id. at 1233–34 (giving three examples); see also  Guam Soc. of Obstetricians and Gynecologists v. Ada, 100 F.3d 691, 698–99 (9th Cir. 1996) (concluding that enhancement was appropriate where case was extremely controversial and attorney received death threats during the course of the litigation).  No one contends that this is a case where the clients were detested, the litigation was unpopular, or the attorneys' standing in their profession or community suffered in the least.  In fact, just the opposite is true.  Kenny A., 532 F.3d at 1234–35 (Carnes, J., concurring); cf. Applegate v. United States, 52 Fed. Cl. 751, 773 (Fed. Cl. 2002) (reversing judgment awarding enhancement where "the facts here demonstrate that [plaintiffs' counsel] was

The Supreme Court had another go at the issue two years later in the Delaware Valley case. The court of appeals had affirmed an enhancement based in part on the superior quality of the representation and the exceptional nature of the success achieved. Delaware Valley, 478 U.S. at 554–56, 106 S. Ct. at 3093–94. The Supreme Court held that the enhancement was improper. Id. at 567–68, 106 S. Ct. at 3099–3100. In explaining why, the Court made statements indicating that it was categorically ruling out enhancements for superior performance and by extension superior results. See id. at 564–66, 106 S. Ct. at 3098–3100. For example, the Court stated that the special skill and experience of counsel, the quality of representation, and the results obtained "are presumably fully reflected in the lodestar amount, and thus cannot serve as independent bases for increasing the basic fee award." Delaware Valley, 478 U.S. at 565, 106 S. Ct. at 3098. And the Court said this about superior performance enhancements: "In short, the lodestar figure includes most, if not all, of the relevant factors constituting a 'reasonable' attorney's fee, and it is unnecessary to enhance the fee for superior performance in order to serve the statutory purpose of enabling plaintiffs to secure legal assistance." Id. at 566, 106 S. Ct. at 3098; see also id. at

not prosecuting an unattractive case, but rather pursuing a cause celeb—the type of case that a firm with local roots likely would embrace and seek to publicize to its clients and prospective clients as an indication of its community involvement").

566, 106 S. Ct. at 3099 ("[T]he overall quality of performance ordinarily should not be used to adjust the lodestar, thus removing any danger of 'double counting'").

Those categorical statements are clear, and if the Delaware Valley opinion's discussion had ended there everyone would agree that this type of enhancement had been categorically ruled out. The problem is that the discussion did not end with those statements. Instead, there was a "furthermore." After explaining why the quality of the performance or the results obtained cannot serve as bases for enhancing the fee award, the Court stated that "[f]urthermore" there was neither specific evidence nor specific findings in that case about why the results were so outstanding or why the quality of representation was not fully reflected in the lodestar. Id. at 567–68, 106 S. Ct. at 3099. And "[i]n the absence of such evidence and such findings," the Court could "find no reason to increase the fee award" based on the quality of representation. Id. at 568, 106 S. Ct. at 3099–3100.

There are two ways to interpret the Delaware Valley decision and its "furthermore" discussion. One way is to read the decision as containing two alternative holdings: an enhancement for superior representation and exceptional results is never permitted; and, even if it were, there was insufficient evidence or findings of anything special in that case. See Kenny A., 532 F.3d at 1239–41

37

(Carnes, J., concurring).  The other way is to read Delaware Valley as containing not two alternative holdings, but only one, which is that such enhancements are not allowed absent specific evidence and findings to support the conclusion that the quality of representation and results obtained were truly special.  See Kenny A., 532 F.3d at 1243–45 (Wilson, J., concurring);  Geier v. Sundquist, 372 F.3d 784, 794–95 (6th Cir. 2004).  Under that view, everything before the "furthermore" in the Delaware Valley opinion is not an alternative holding but only dicta.

If my alternative holdings interpretation of Delaware Valley is correct, then the law of this circuit and of the Sixth Circuit is flatly contrary to Supreme Court precedent, which needs to be clarified so that it will no longer be misinterpreted as holding exactly the opposite of what it does.   If, instead, the narrow interpretation of the Delaware Valley decision is correct, then the Supreme Court has yet to hold—not imply, intimate, or suggest in dicta but actually hold—whether the federal fee-shifting statutes allow an enhancement when there is specific evidence and findings of superior performance and unexpected results.

The issue is clearly and squarely presented in this case.   Two of the panel members in this case sharply disagreed and wrote about the meaning and effect of the Blum  and Delaware Valley decisions, both of which reversed instead of

38

affirmed enhancements for superior performance and results. Those two panel members also disagreed about the effect on this issue of the reasoning in City of Burlington v. Dague, 505 U.S. 557, 112 S. Ct. 2638 (1992), which is the Court's last decision on the subject of lodestar enhancements. Compare Kenny A., 532 F.3d at 1221–33, 1239–41 (Carnes, J., concurring) with id. at 1242–49 (Wilson, J., concurring). The third panel member kept his views about that matter to himself. See id. at 1251 (Hill, J., concurring). The bottom line for certiorari review purposes, however, is that the law of the Eleventh Circuit permits this kind of enhancement, and that law was applied to permit a $4.5 million enhancement of the lodestar amount in this case. See id. at 1236–39, 1242 (Carnes, J., concurring); id. at 1242, 1251 (Wilson, J., concurring); id. at 1251 (Hill, J., concurring).

The decision whether to affirm or vacate the $4.5 million enhancement part of the attorney's fee award turns on whether an enhancement for superior performance and exceptional results is permissible. If boosting the fee award on that basis is not proper, the judgment of the district court will have to be vacated and the case remanded. On remand the enhancement will have to be set aside entirely or at least substantially reduced because without that basis the $4.5 million increase above the lodestar amount of reasonable fees cannot stand.

39

This case presents the superior performance and exceptional results enhancement issue as well as any ever will because the evidence and findings in this case are as specific as any are likely to be. It is true that the evidence that the attorneys put into the record in this case was in the form of affidavits from friendly lawyers with a vested interest in boosting the award, and for that and other reasons I did not find it particularly convincing. See id. at 1231–33 (Carnes, J., concurring). But the district court and at least one panel member did. See id., 532 F.3d at 1247–49 (Wilson, J., concurring); see Kenny A., 454 F. Supp. 2d at 1290. More importantly for present purposes, the evidence in this case goes beyond that in the Blum and Delaware Valley cases, and given the nature of the question it is hard to imagine any more specific supporting evidence than is in the record here.

And the supporting findings by the district court were probably as specific as any could be, to say nothing of the enthusiasm with which they were uttered. See Kenny A., 454 F. Supp. 2d at 1288–90. The district court unequivocally proclaimed that the attorneys being awarded fees "brought a higher degree of skill, commitment, dedication, and professionalism to this litigation than the Court has seen displayed by the attorneys in any other case during its 27 years on the bench." Id. at 1289. To convey its feelings about the result obtained, the court reached back beyond its 27 years on the bench, stating that "[a]fter 58 years as a practicing

attorney and federal judge, the Court is unaware of any other case in which a plaintiff class has achieved such a favorable result on such a comprehensive scale." Id. at 1290.

In fact, the district court speculated, the results the attorneys were able to achieve through settlement probably exceeded what their clients were entitled to receive under the law. Id. at 1289–90 ("[E]ven if plaintiffs had prevailed in a trial of this case, it is doubtful that they would have obtained relief as 'intricately detailed and comprehensive' as that contained in the Consent Decree."); see also Kenny A., 532 F.3d at 1229–30 (Carnes, J., concurring) (explaining that "[t]o the extent that the district court rewarded plaintiffs' counsel with an enhancement for obtaining better results than the class would have received had the case been resolved on the merits, that is plainly wrong," because "the fee-shifting statutes are not designed to provide representation that will win plaintiffs more than a correct application of substantive and remedial law entitles them to receive"). The district court's statement highlights the exceptional results issue.[3]

---

[3] The issue is also highlighted by the fact that the district court calculated the lodestar using the full hourly rates the plaintiffs requested, ranging from $75 to $150 for paralegals, interns, and assistants up to from $215 to $495 for the attorneys depending on "skill, judgment, and performance." See Kenny A., 454 F. Supp. 2d at 1284–85; See also Kenny A., 532 F.3d at 1217 (majority opinion). "[T]hose hourly rates . . . appear to be on the generous side," id. at 1220 n.2., but the district court did not cut them by so much as a penny.

In approving in full the hourly rates that the plaintiffs requested, the district court expressly relied on "the stellar performance of plaintiffs' counsel throughout this long and

41

It may be that the evidence and findings in this case are insufficient to support a superior performance and exceptional results enhancement. If so, it likely will be because no evidence or findings can ever justify an enhancement on performance and results grounds because the lodestar already takes into account all of the factors that go into how well an attorney performs and the result obtained. The decisions in Dague and Delaware Valley imply as much. See Dague, 505 U.S. at 562–63, 112 S. Ct. at 2641–42; Delaware Valley, 478 U.S. at 565–66, 106 S. Ct. at 3098–99. If that is the law, the Supreme Court needs to tell those of us on the lower courts because that point has not gotten across. See, e.g., Kenny A., 532 F.3d at 1243–45 (Wilson, J., concurring); Geier, 372 F.3d at 794–95; see also Norman, 836 F.2d at 1302; NAACP, 812 F.2d at 1336–37; see generally Kenny A., 532 F.3d at 1239 n.29 (Carnes, J., concurring).

The importance of the lodestar question presented by this case extends beyond the particular statute involved in this case. It arises not only under 42 U.S.C. § 1988, as significant as that statute is, but also under every other federal

difficult case," Kenny A., 454 F. Supp. 2d at 1286. That admission perfectly frames the question of whether the Supreme Court meant what it said in Delaware Valley about "the novelty and complexity of the issues, the special skill and experience of counsel, the quality of representation, and the results obtained from the litigation [being] presumably fully reflected in the lodestar amount, and thus [those factors] cannot serve as independent bases for increasing the basic fee award." Delaware Valley, 478 U.S. at 565, 106 S. Ct. at 3098 (quotation marks omitted, brackets omitted and added). The district court plainly counted "the stellar performance of plaintiffs' counsel" twice—once in setting the high hourly rates and again in enhancing the lodestar after using those hourly rates to calculate it. Kenny A., 454 F. Supp. 2d at 1286, 1288-89.

42

fee-shifting statute that allows the prevailing party to recover a reasonable attorney's fee. While these statutes "cover a wide variety of contexts and causes of action, the benchmark for the awards under nearly all of these statutes is that the attorney's fee must be 'reasonable.'" Delaware Valley, 478 U.S. at 562, 106 S. Ct. at 3096–97. And "case law construing what is a 'reasonable' fee applies uniformly to all of [the federal fee-shifting statutes]." Dague, 505 U.S. at 562, 112 S. Ct. at 2641; see also Indep. Fed'n of Flight Attendants v. Zipes, 491 U.S. 754, 758 n.2, 109 S. Ct. 2732, 2735 n.2 (1989) ("[F]ee-shifting statutes' similar language is 'a strong indication' that they are to be interpreted alike." (citation omitted)); Blum, 465 U.S. at 893, 104 S. Ct. at 1546 (noting that "Congress directed that attorney's fees [under § 1988] be calculated according to standards currently in use under other fee-shifting statutes"); Ruckelshaus v. Sierra Club, 463 U.S. 680, 691, 103 S. Ct. 3274, 3281 (1983) (explaining "that similar attorney's fee provisions should be interpreted pari passu"); Northcross v. Bd. of Educ. of Memphis City Schs., 412 U.S. 427, 428, 93 S. Ct. 2201, 2202 (1973) (noting that "[t]he similarity of language" in two fee-shifting statutes "is, of course, a strong indication that the two statutes should be interpreted pari passu").

At a minimum, there are "over 100 separate [federal] statutes providing for the award of attorney's fees." Delaware Valley, 478 U.S. at 562, 106 S. Ct. at

3096. The actual number may be higher. See John F. Vargo, The American Rule on Attorney Fee Allocation: The Injured Person's Access to Justice, 42 Am. U. L. Rev. 1567, 1588 (1993) (noting that "[t]here are over 200 federal statutes . . . that provide for shifting of attorney's fees"); Marjorie A. Silver, Evening the Odds: The Case for Attorneys' Fee Awards for Administrative Resolution of Title VI and Title VII Disputes, 67 N.C. L. Rev. 379, 386 n.47 (1989) (estimating that "Congress has enacted anywhere from 100 to 200 fee-shifting statutes" (internal citations omitted)). A partial list of federal fee-shifting statutes is attached as an appendix to this opinion. The precise number of federal "reasonable attorney's fee" statutes is not the point. The point is that this issue arises under not just one federal statute but under at least a hundred of them.

An unresolved issue affecting so many federal statutes is important. The record in this case and the facts and findings drawn from it present this important, unresolved issue as well as any case will and better than almost any other case can. It presents an opportunity for the Supreme Court to reach the issue it could not reach in Blum and Delaware Valley: Under the federal fee-shifting statutes can a reasonable attorney's fee be enhanced based on extraordinary effort or results where some evidence and findings support the enhancement, or are all of the factors that lead to the quality of the performance and the results obtained already

44

covered in the lodestar calculation, as the opinions in <u>Delaware Valley</u> and <u>Dague</u>

imply?

APPENDIX

Partial List of Federal Statutes Providing for the Prevailing Party

To Recover a Reasonable Attorney's Fee

Freedom of Information Act, 5 U.S.C. § 552(a)(4)(E);

Privacy Act of 1974, 5 U.S.C. § 552a(g)(2)(B) & (g)(4)(B);

Government in the Sunshine Act, 5 U.S.C. § 552b(i);

Commodity Exchange Act, 7 U.S.C. § 18(d)(1) & (e);

Packers and Stockyards Act, 7 U.S.C. § 210(f);

Perishable Agricultural Commodities Act 1930, 7 U.S.C. § 499g(b); Agricultural

Fair Practices Act of 1967, 7 U.S.C. § 2305(a) & (c);

Plant Variety Protection Act, 7 U.S.C. § 2565;

Bankruptcy Reform Act of 1978, 11 U.S.C. §§ 303(i)(1)(B) & 523(d);

Home Owners' Loan Act, 12 U.S.C. § 1464(q)(3);

Federal Credit Union Act, 12 U.S.C. § 1786(p);

Federal Deposit Insurance Act, 12 U.S.C. § 1818(n);

Bank Holding Company Act Amendments of 1970, 12 U.S.C. § 1975;

Real Estate Settlement Procedures Act of 1974, 12 U.S.C. § 2607(d)(5);

Right to Financial Privacy Act of 1978, 12 U.S.C. §§ 3417(a)(4) & 3418;

Clayton Act, 15 U.S.C. §15(a) & (b)(1);

Hart-Scott-Rodino Antitrust Improvements Act of 1976, 15 U.S.C. §§ 15c(a)(2) &

26;

Securities Act of 1933, 15 U.S.C. § 77k(e);

Trust Indenture Act of 1939, 15 U.S.C. §§ 77ooo(e) & 77www(a);

Securities Exchange Act of 1934, 15 U.S.C. §§ 78i(e), 78r(a), 78u(h)(8);

Jewelers' Liability Act, 15 U.S.C. § 298(b)–(d);

Consumer Leasing Act, 15 U.S.C. § 1667b(a);

Consumer Credit Protection Act, 15 U.S.C. §§ 1691e(d) & 1692k(a)(3);

Interstate Land Sales Full Disclosure Act, 15 U.S.C. § 1709(c);

Consumer Product Safety Act, 15 U.S.C. §§ 2060(c), 2072(a), 2073(a);

Hobby Protection Act, 15 U.S.C. § 2102;

Magnuson-Moss Warranty—Federal Trade Commission Improvement Act, 15

U.S.C. § 2310(d)(2);

Toxic Substances Control Act, 15 U.S.C. §§ 2618(d) & 2619(c)(2);

Petroleum Marketing Practices Act, 15 U.S.C. § 2805(d)(1)(c) & (3);

Condominium and Cooperative Abuse Relief Act of 1980, 15 U.S.C. §§ 3608(d)

& 3611(d);

Export Trading Company Act of 1982, 15 U.S.C. § 4016(b)(1) & (4);

National Cooperative Research Act of 1984, 15 U.S.C. § 4304(a)(1) & (b);

National Historic Preservation Act Amendments of 1980, 16 U.S.C. § 470w-4;

Endangered Species Act of 1973, 16 U.S.C. § 1540(g)(4);

Public Utility Regulatory Policies Act of 1978, 16 U.S.C. § 2632(a)(1);

Copyright Act of 1976, 17 U.S.C. § 505;

Semiconductor Chip Protection Act of 1984, 17 U.S.C. § 911(f);

Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1964(c);

Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. § 2520(b)(3);

Navajo and Hopi Indian Relocation Amendments Act of 1980, 25 U.S.C. § 640d-27(b);

Tax Reform Act of 1976, 26 U.S.C. § 6110(j)(2)(B);

Jury System Improvement Act of 1978, 28 U.S.C. § 1875(d)(2);

Judicial Code, 28 U.S.C. § 1927; 28 U.S.C. § 2412(b);

Equal Access to Justice Act, 5 U.S.C. § 504(a)–(b);

Fair Labor Standards Act of 1938, 29 U.S.C. § 216(b);

Labor-Management Reporting and Disclosure Act of 1959, 29 U.S.C. § 431(c);

Age Discrimination in Employment Act of 1967, 29 U.S.C. § 626(b);

Rehabilitation Act of 1973, 29 U.S.C. § 794a(b);

Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1132(g);

Multiemployer Pension Plan Amendments Act of 1980, 29 U.S.C. § 1451(e);

Federal Mine Safety and Health Act of 1977, 30 U.S.C. §§ 815(c)(3) & 938(c);

Surface Mining Control and Reclamation Act of 1977, 30 U.S.C. §§ 1275(e) & 1293(c);

Deep Seabed Hard Mineral Resources Act, 30 U.S.C. § 1427(c);

Federal Oil and Gas Royalty Management Act of 1982, 30 U.S.C. § 1734(a)(4);

Longshore and Harbor Workers' Compensation Act, 33 U.S.C. § 928(a); Clean Water Act, 33 U.S.C. § 1365(d);

Marine Protection, Research, and Sanctuaries Act of 1972, 33 U.S.C. § 1415(g)(4);

Deepwater Ports Act of 1974, 33 U.S.C. § 1515(d);

Act to Prevent Pollution from Ships, 33 U.S.C. § 1910(d);

Patent Infringement Act, 35 U.S.C. § 285;

Safe Drinking Water Act, 42 U.S.C. § 300j-8(d);

Social Security Act, 42 U.S.C. § 406(b);

Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988(b);

Voting Rights Act of 1965, 42 U.S.C. § 1973l(e);

Civil Rights of Institutionalized Persons Act, 42 U.S.C. §§ 1997a(b) & 1997c(d);

Title II of the Civil Rights Act of 1964, 42 U.S.C. § 2000a-3(b);

Title III of the Civil Rights Act of 1964, 42 U.S.C. § 2000b-1;

Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5(k);

Privacy Protection Act of 1980, 42 U.S.C. § 2000aa-6(f);

Atomic Energy Act of 1954, 42 U.S.C. § 2184;

Fair Housing Act of 1968, 42 U.S.C. § 3612(p);

Uniform Relocation Assistance and Real Property Acquisition Policies Act, 42
U.S.C. § 4654(a) & (c);

Noise Control Act of 1972, 42 U.S.C. § 4911(d);

National Manufactured Housing Construction and Safety Standards Act of 1974,
42 U.S.C. § 5412(b);

Energy Reorganization Act of 1974, 42 U.S.C. § 5851(e)(2);

Comprehensive Older Americans Act Amendments of 1978, 42 U.S.C. §
6104(e)(1);

Energy Policy and Conservation Act, 42 U.S.C. § 6305(d);

Solid Waste Disposal Act, 42 U.S.C. § 6972(e);

Clean Air Act, 42 U.S.C. §§ 7604(d), 7607(f);

Clean Air Act Amendments of 1977, 42 U.S.C. § 7622(e)(2);

Powerplant and Industrial Fuel Use Act of 1978, 42 U.S.C. § 8435(d);

Ocean Thermal Energy Conversion Act of 1980, 42 U.S.C. § 9124(d);

Outer Continental Shelf Lands Act Amendments of 1978, 43 U.S.C. § 1349(a)(5)

& (b)(2);

Railway Labor Act of 1926, 45 U.S.C. § 153(p); Communications Act of 1934, 47 U.S.C. §§ 206 & 407;

Cable Communications Policy Act of 1984, 47 U.S.C. § 553(c)(2)(C);

Interstate Commerce Act, 49 U.S.C. §§ 11704(d)(3), 11707(b);

Foreign Intelligence Surveillance Act of 1978, 50 U.S.C. § 1810(c).