*546 Justice Alito
delivered the opinion of the Court.
This case presents the question whether the calculation of an attorney’s fee, under federal fee-shifting statutes, based on the “lodestar,” i. e., the number of hours worked multiplied by the prevailing hourly rates, may be increased due to superior performance and results.[1] We have stated in previous cases that such an increase is permitted in extraordinary circumstances, and we reaffirm that rule. But as we have also said in prior cases, there is a strong presumption that the lodestar is sufficient; factors subsumed in the lodestar calculation cannot be used as a ground for increasing an award above the lodestar; and a party seeking fees has the burden of identifying a factor that the lodestar does not adequately take into account and proving with specificity that an enhanced fee is justified. Because the District Court did not apply these standards, we reverse the decision below and remand for further proceedings consistent with this opinion.
*547 I
A
Respondents (plaintiffs below) are children in the Georgia foster-care system and their next friends. They filed this class action on behalf of 3,000 children in foster care and named as defendants the Governor of Georgia and various state officials (petitioners in this case). Claiming that deficiencies in the foster-care system in two counties near Atlanta violated their federal and state constitutional and statutory rights, respondents sought injunctive and declaratory relief, as well as attorney’s fees and expenses.
The United States District Court for the Northern District of Georgia eventually referred the case to mediation, where the parties entered into a consent decree, which the District Court approved. The consent decree resolved all pending issues other than the fees that respondents’ attorneys were entitled to receive under 42 U. S. C. § 1988.[2]
B
Respondents submitted a request for more than $14 million in attorney’s fees. Half of that amount was based on their calculation of the lodestar — roughly 30,000 hours multiplied by hourly rates of $200 to $495 for attorneys and $75 to $150 for nonattorneys. In support of their fee request, respondents submitted affidavits asserting that these rates were within the range of prevailing market rates for legal services in the relevant market.
*548 The other half of the amount that respondents sought represented a fee enhancement for superior work and results. Affidavits submitted in support of this request claimed that the lodestar amount “would be generally insufficient to induce lawyers of comparable skill, judgment, professional representation and experience” to litigate this case. See, e. g., App. 80. Petitioners objected to the fee request, contending that some of the proposed hourly rates were too high, that the hours claimed were excessive, and that the enhancement would duplicate factors that were reflected in the lodestar amount.
The District Court awarded fees of approximately $10.5 million. See 454 F. Supp. 2d 1260,1296 (ND Ga. 2006). The District Court found that the hourly rates proposed by respondents were “fair and reasonable,” id., at 1285, but that some of the entries on counsel’s billing records were vague and that the hours claimed for many of the billing categories were excessive. The court therefore cut the nontravel hours by 15% and halved the hourly rate for travel hours. This resulted in a lodestar calculation of approximately $6 million.
The court then enhanced this award by 75%, concluding that the lodestar calculation did not take into account “(1) the fact that class counsel were required to advance case expenses of $1.7 million over a three-year period with no on[-]going reimbursement, (2) the fact that class counsel were not paid on an on-going basis as the work was being performed, and (3) the fact that class counsel’s ability to recover a fee and expense reimbursement were completely contingent on the outcome of the case.” Id., at 1288. The court stated that respondents’ attorneys had exhibited “a higher degree of skill, commitment, dedication, and professionalism ... than the Court has seen displayed by the attorneys in any other case during its 27 years on the bench.” Id., at 1289. The court also commented that the results obtained were “ ‘extraordinary’ ” and added that “[ajfter 58 *549 years as a practicing attorney and federal judge, the Court is unaware of any other case in which a plaintiff class has achieved such a favorable result on such a comprehensive scale.” Id., at 1290. The enhancement resulted in an additional $4.5 million fee award.
Relying on prior Circuit precedent, a panel of the Eleventh Circuit affirmed. 532 F. 3d 1209 (2008). The panel held that the District Court had not abused its discretion by failing to make a larger reduction in the number of hours for which respondents’ attorneys sought reimbursement, but the panel commented that it “would have cut the billable hours more if we were deciding the matter in the first instance” and added that the hourly rates approved by the District Court also “appeared] to be on the generous side.” Id., at 1220, and n. 2. On the question of the enhancement, however, the panel splintered, with each judge writing a separate opinion.
Judge Carnes concluded that binding Eleventh Circuit precedent required that the decision of the District Court be affirmed, but he opined that the reasoning in our opinions suggested that no enhancement should be allowed in this case. He concluded that the quality of the attorneys’ performance was “adequately accounted for 'either in determining the reasonable number of hours expended on the litigation or in setting the reasonable hourly rates.’ ” Id., at 1225 (quoting Pennsylvania v. Delaware Valley Citizens’ Council for Clean Air, 478 U. S. 546, 565-566 (1986) (Delaware Valley I)). He found that an enhancement could not be justified based on delay in the recovery of attorney’s fees and reimbursable expenses because such delay is a routine feature of cases brought under 42 U. S. C. § 1983. And he reasoned that the District Court had contravened our holding in Burlington v. Dague, 505 U. S. 557 (1992), when it relied on “ ‘the fact that class counsel’s compensation was totally contingent upon prevailing in this action.’” 532 F. 3d, at 1226, 1228 (quoting affidavit in support of fee request).
*550 Judge Wilson concurred in the judgment but disagreed with Judge Carnes’ view that Eleventh Circuit precedent is inconsistent with our decisions. Judge Hill also concurred in the judgment but expressed no view about the correctness of the prior Circuit precedent.
The Eleventh Circuit denied rehearing en banc over the dissent of three judges. See 547 F. 3d 1319 (2008). Judge Wilson filed an opinion concurring in the denial of rehearing; Judge Carnes, joined by Judges Tjoflat and Dubina, filed an opinion dissenting from the denial of rehearing; and Judge Tjoflat filed a separate dissent, contending, among other things, that the District Court, by basing the enhancement in large part on a comparison of the performance of respondents’ attorneys with all of the unnamed attorneys whose work he had observed during his professional career, had improperly rendered a decision that was effectively unreviewable on appeal and had essentially served as a witness in support of the enhancement. Id., at 1326-1327.
We granted certiorari. 556 U. S. 1165 (2009).
II
The general rule in our legal system is that each party must pay its own attorney’s fees and expenses, see Hensley v. Eckerkart, 461 U. S. 424, 429 (1983), but Congress enacted 42 U. S. C. § 1988 in order to ensure that federal rights are adequately enforced. Section 1988 provides that a prevailing party in certain civil rights actions may recover “a reasonable attorney’s fee as part of the costs.”[3] Unfortunately, the statute does not explain what Congress meant by a “reasonable” fee, and therefore the task of identifying an appropriate methodology for determining a “reasonable” fee was left for the courts.
One possible method was set out in Johnson v. Georgia Highway Express, Inc., 488 F. 2d 714, 717-719 (CA5 1974), *551 which listed 12 factors that a court should consider in determining a reasonable fee.[4] This method, however, “gave very little actual guidance to district courts. Setting attorney’s fees by reference to a series of sometimes subjective factors placed unlimited discretion in trial judges and produced disparate results.” Delaware Valley I, supra, at 563.
An alternative, the lodestar approach, was pioneered by the Third Circuit in Lindy Bros. Builders, Inc. of Philadelphia v. American Radiator & Standard Sanitary Corp., 487 F. 2d 161 (1973), appeal after remand, 540 F. 2d 102 (1976), and “achieved dominance in the federal courts” after our decision in Hensley. Gisbrecht v. Barnhart, 535 U. S. 789, 801 (2002). “Since that time, ‘[t]he “lodestar” figure has, as its name suggests, become the guiding light of our fee-shifting jurisprudence.’ ” Ibid, (quoting Dague, supra, at 562).
Although the lodestar method is not perfect, it has several important virtues. First, in accordance with our understanding of the aim of fee-shifting statutes, the lodestar looks to “the prevailing market rates in the relevant community.” Blum v. Stenson, 465 U. S. 886, 895 (1984). Developed after the practice of hourly billing had become widespread, see Gisbrecht, supra, at 801, the lodestar method produces an award that roughly approximates the fee that the prevailing attorney would have received if he or she had been representing a paying client who was billed by the hour in a comparable case. Second, the lodestar method is readily administrable, see Dague, supra, at 566; see also *552 Buckhannon Board & Care Home, Inc. v. West Virginia Dept. of Health and Human Resources, 582 U. S. 598, 609 (2001); and unlike the Johnson approach, the lodestar calculation is “objective,” Hensley, supra, at 433, and thus cabins the discretion of trial judges, permits meaningful judicial review, and produces reasonably predictable results.
III
Our prior decisions concerning the federal fee-shifting statutes have established six important rules that lead to our decision in this case.
First, a “reasonable” fee is a fee that is sufficient to induce a capable attorney to undertake the representation of a meritorious civil rights case. See Delaware Valley I, 478 U. S., at 565 (“[I]f plaintiffs . .. find it possible to engage a lawyer based on the statutory assurance that he will be paid a ‘reasonable fee/ the purpose behind the fee-shifting statute has been satisfied”); Blum, supra, at 897 (“[A] reasonable attorney’s fee is one that is adequate to attract competent counsel, but that does not produce windfalls to attorneys” (ellipsis, brackets, and internal quotation marks omitted)). Section 1988’s aim is to enforce the covered civil rights statutes, not to provide “a form of economic relief to improve the financial lot of attorneys.” Delaware Valley I, supra, at 565.
Second, the lodestar method yields a fee that is presumptively sufficient to achieve this objective. See Dague, 505 U. S., at 562; Delaware Valley I, supra, at 565; Blum, supra, at 897; see also Gisbrecht, supra, at 801-802. Indeed, we have said that the presumption is a “strong” one. Dague, supra, at 562; Delaware Valley I, supra, at 565.
Third, although we have never sustained an enhancement of a lodestar amount for performance, see Brief for United States as Amicus Curiae 12, 17, we have repeatedly said that enhancements may be awarded in “ ‘rare’ ” and “ ‘exceptional’” circumstances. Delaware Valley I, supra, at 565; Blum, supra, at 897; Hensley, supra, at 435.
*553 Fourth, we have noted that “the lodestar figure includes most, if not all, of the relevant factors constituting a ‘reasonable’ attorney’s fee,” Delaware Valley I, supra, at 566, and have held that an enhancement may not be awarded based on a factor that is subsumed in the lodestar calculation, see Dague, supra, at 562-563; Pennsylvania v. Delaware Valley Citizens’ Council for Clean Air, 483 U. S. 711, 726-727 (1987) (Delaware Valley II) (plurality opinion); Blum, 465 U. S., at 898. We have thus held that the novelty and complexity of a case generally may not be used as a ground for an enhancement because these factors “presumably [are] fully reflected in the number of billable hours recorded by counsel.” Ibid. We have also held that the quality of an attorney’s performance generally should not be used to adjust the lodestar “[b]ecause considerations concerning the quality of a prevailing party’s counsel’s representation normally are reflected in the reasonable hourly rate.” Delaware Valley I, supra, at 566.
Fifth, the burden of proving that an enhancement is necessary must be borne by the fee applicant. Dague, supra, at 561; Blum, 465 U. S., at 901-902.
Finally, a fee applicant seeking an enhancement must produce “specific evidence” that supports the award. Id., at 899, 901 (An enhancement must be based on “evidence that enhancement was necessary to provide fair and reasonable compensation”). This requirement is essential if the lodestar method is to realize one of its chief virtues, i. e., providing a calculation that is objective and capable of being reviewed on appeal.
IV
A
In light of what we have said in prior cases, we reject any contention that a fee determined by the lodestar method may not be enhanced in any situation. The lodestar method was never intended to be conclusive in all circumstances. In *554 stead, there is a “strong presumption” that the lodestar figure is reasonable, but that presumption may be overcome in those rare circumstances in which the lodestar does not adequately take into account a factor that may properly be considered in determining a reasonable fee.
B
In this case, we are asked to decide whether either the quality of an attorney’s performance or the results obtained are factors that may properly provide a basis for an enhancement. We treat these two factors as one. When a plaintiff’s attorney achieves results that are more favorable than would have been predicted based on the governing law and the available evidence, the outcome may be attributable to superior performance and commitment of resources by plaintiff’s counsel. Or the outcome may result from inferior performance by defense counsel, unanticipated defense concessions, unexpectedly favorable rulings by the court, an unexpectedly sympathetic jury, or simple luck. Since none of these latter causes can justify an enhanced award, superior results are relevant only to the extent it can be shown that they are the result of superior attorney performance. Thus, we need only consider whether superior attorney performance can justify an enhancement. And in light of the principles derived from our prior cases, we inquire whether there are circumstances in which superior attorney performance is not adequately taken into account in the lodestar calculation. We conclude that there are a few such circumstances but that these circumstances are indeed “rare” and “exceptional,” and require specific evidence that the lodestar fee would not have been “adequate to attract competent counsel,” Blum, supra, at 897 (internal quotation marks omitted).
First, an enhancement may be appropriate where the method used in determining the hourly rate employed in the lodestar calculation does not adequately measure the attor *555 ney’s true market value, as demonstrated in part during the litigation.[5] This may occur if the hourly rate is determined by a formula that takes into account only a single factor (such as years since admission to the bar)[6] or perhaps only a few similar factors. In such a case, an enhancement may be appropriate so that an attorney is compensated at the rate that the attorney would receive in cases not governed by the federal fee-shifting statutes. But in order to provide a calculation that is objective and reviewable, the trial judge should adjust the attorney’s hourly rate in accordance with specific proof linking the attorney’s ability to a prevailing market rate.
Second, an enhancement may be appropriate if the attorney’s performance includes an extraordinary outlay of expenses and the litigation is exceptionally protracted. As Judge Carnes noted below, when an attorney agrees to represent a civil rights plaintiff who cannot afford to pay the attorney, the attorney presumably understands that no reimbursement is likely to be received until the successful resolution of the case, 532 F. 3d, at 1227, and therefore enhancements to compensate for delay in reimbursement for expenses must be reserved for unusual eases. In such exceptional cases, however, an enhancement may be allowed, but the amount of the enhancement must be calculated using a method that is reasonable, objective, and capable of being reviewed on appeal, such as by applying a standard rate of interest to the qualifying outlays of expenses.
*556 Third, there may be extraordinary circumstances in which an attorney’s performance involves exceptional delay in the payment of fees. An attorney who expects to be compensated under § 1988 presumably understands that payment of fees will generally not come until the end of the case, if at all. See ibid. Compensation for this delay is generally made “either by basing the award on current rates or by adjusting the fee based on historical rates to reflect its present value.” Missouri v. Jenkins, 491 U. S. 274, 282 (1989) (internal quotation marks omitted). But we do not rule out the possibility that an enhancement may be appropriate where an attorney assumes these costs in the face of unanticipated delay, particularly where the delay is unjustifiably caused by the defense. In such a case, however, the enhancement should be calculated by applying a method similar to that described above in connection with exceptional delay in obtaining reimbursement for expenses.
We reject the suggestion that it is appropriate to grant performance enhancements on the ground that departures from hourly billing are becoming more common. As we have noted, the lodestar was adopted in part because it provides a rough approximation of general billing practices, and accordingly, if hourly billing becomes unusual, an alternative to the lodestar method may have to be found. However, neither respondents nor their amici contend that that day has arrived. Nor have they shown that permitting the award of enhancements on top of the lodestar figure corresponds to prevailing practice in the general run of cases.
We are told that, under an increasingly popular arrangement, attorneys are paid at a reduced hourly rate but receive a bonus if certain specified results are obtained, and this practice is analogized to the award of an enhancement such as the one in this case. Brief for Respondents 55-57. The analogy, however, is flawed. An attorney who agrees, at the outset of the representation, to a reduced hourly rate in exchange for the opportunity to earn a performance bonus is *557 in a position far different from an attorney in a § 1988 case who is compensated at the full prevailing rate and then seeks a performance enhancement in addition to the lodestar amount after the litigation has concluded. Reliance on these comparisons for the purposes of administering enhancements, therefore, is not appropriate.
V
In the present case, the District Court did not provide proper justification for the large enhancement that it awarded. The court increased the lodestar award by 75% but, as far as the court’s opinion reveals, this figure appears to have been essentially arbitrary. Why, for example, did the court grant a 75% enhancement instead of the 100% increase that respondents sought? And why 75% rather than 50% or 25% or 10%?
The District Court commented that the enhancement was the “minimum enhancement of the lodestar necessary to reasonably compensate [respondents’] counsel.” 454 F. Supp. 2d, at 1290. But the effect of the enhancement was to increase the top rate for the attorneys to more than $866 per hour,[7] and the District Court did not point to anything in the record that shows that this is an appropriate figure for the relevant market.
The District Court pointed to the fact that respondents’ counsel had to make extraordinary outlays for expenses and *558 had to wait for reimbursement, id., at 1288, but the court did not calculate the amount of the enhancement that is attributable to this factor. Similarly, the District Court noted that respondents’ counsel did not receive fees on an ongoing basis while the case was pending, but the court did not sufficiently link this factor to proof in the record that the delay here was outside the normal range expected by attorneys who rely on § 1988 for the payment of their fees or quantify the disparity. Nor did the court provide a calculation of the cost to counsel of any extraordinary and unwarranted delay. And the court’s reliance on the contingency of the outcome contravenes our holding in Dague. See 505 U. S., at 565.
Finally, insofar as the District Court relied on a comparison of the performance of counsel in this case with the performance of counsel in unnamed prior cases, the District Court did not employ a methodology that permitted meaningful appellate review. Needless to say, we do not question the sincerity of the District Court’s observations, and we are in no position to assess their accuracy. But when a trial judge awards an enhancement on an impressionistic basis, a major purpose of the lodestar method — providing an objective and reviewable basis for fees, see id., at 566 — is undermined.
Determining a “reasonable attorney’s fee” is a matter that is committed to the sound discretion of a trial judge, see 42 U. S. C. § 1988 (permitting court, “in its discretion,” to award fees), but the judge’s discretion is not unlimited. It is essential that the judge provide a reasonably specific explanation for all aspects of a fee determination, including any award of an enhancement. Unless such an explanation is given, adequate appellate review is not feasible, and without such review, widely disparate awards may be made, and awards may be influenced (or at least, may appear to be influenced) by a judge’s subjective opinion regarding particular attorneys or the importance of the case. In addition, in future cases, *559 defendants contemplating the possibility of settlement will have no way to estimate the likelihood of having to pay a potentially huge enhancement. See Marek v. Chesny, 473 U. S. 1, 7 (1985) C“[M]any a defendant would be unwilling to make a binding settlement offer on terms that left it exposed to liability for attorney’s fees in whatever amount the court might fix on motion of the plaintiff’”).
Section 1988 serves an important public purpose by making it possible for persons without means to bring suit to vindicate their rights. But unjustified enhancements that serve only to enrich attorneys are not consistent with the statute’s aim.[8] In many cases, attorney’s fees awarded under § 1988 are not paid by the individuals responsible for the constitutional or statutory violations on which the judgment is based. Instead, the fees are paid in effect by state and local taxpayers, and because state and local governments have limited budgets, money that is used to pay attorney’s fees is money that cannot be used for programs that provide vital public services. Cf. Horne v. Flores, 557 U. S. 433, 448 (2009) (payment of money pursuant to a federal-court order diverts funds from other state or local programs).
*560 * * *
For all these reasons, the judgment of the Court of Appeals is reversed, and the case is remanded for proceedings consistent with this opinion.

It is so ordered.

 Justice Breyer would have us answer this question ‘Tes” and then end the opinion. See post, at 562 (opinion concurring in part and dissenting in part). Such an opinion would be of little use to the bench or bar and would pointlessly invite an additional round of litigation. The issue of the standards to be applied in granting an enhancement is fairly subsumed within the question that we agreed to decide and has been extensively discussed in the briefs filed in this case.

 Title 42 U. S. C. § 1988(b) provides:
“In any action or proceeding to enforce a provision of sections 1981, 1981a, 1982,1983,1985, and 1986 of this title, title IX of Public Law 92-318, the Religious Freedom Restoration Act of 1993, the Religious Land Use and Institutionalized Persons Act of 2000, title VI of the Civil Rights Act of 1964, or section 13981 of this title, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney’s fee as part of the costs .,(Citations omitted.)

 Virtually identical language appears in many of the federal fee-shifting statutes. See Burlington v. Dague, 505 U. S. 557, 562 (1992).

 These factors were: "(1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to the acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the ‘undesirability’ of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.” Hensley v. Eckerhart, 461 U. S. 424, 430, n. 3 (1983).

 Respondents correctly note that an attorney’s “brilliant insights and critical maneuvers sometimes matter far more than hours worked or years of experience.” Brief for Respondents 14. But as we said in Blum v. Stenson, 465 U. S. 886, 898 (1984), “[i]n those cases, the special skill and experience of counsel should be reflected in the reasonableness of the hourly rates.”

 See, e. g., Salazar v. District of Columbia, 128 F. Supp. 2d 8 (DC 2000); Laffey v. Northwest Airlines, Inc., 572 F. Supp. 354 (DC 1983), aff’d in part, rev’d in part, 746 F. 2d 4 (CADC 1984).

 Justice Breyer’s reliance on the average hourly rate for all of respondents’ attorneys is highly misleading. See post, at 570. In calculating the lodestar, the District Court found that the hourly rate for each of these attorneys was “eminently fair and reasonable” and “consistent with the prevailing market rates in Atlanta for comparable work.” 454 F. Supp. 2d, at 1285-1286. Justice Breyer’s calculation of an average hourly rate for all attorney hours reflects nothing more than the fact that much of the work was performed by attorneys whose “fair and reasonable” market rate was below the market average. There is nothing unfair about compensating these attorneys at the very rate that they requested.

 Justice Breyer’s opinion dramatically illustrates the danger of allowing a trial judge to award a huge enhancement not supported by any discernible methodology. That approach would retain the $4.5 million enhancement here so that respondents’ attorneys would earn as much as the attorneys at some of the richest law firms in the country. Post, at 570-571. These fees would be paid by the taxpayers of Georgia, where the annual per capita income is less than $34,000, see Dept. of Commerce, Bureau of Census, Statistical Abstract of the United States: 2010, p. 437 (2009) (Table 665) (figures for 2008), and the annual salaries of attorneys employed by the State range from $48,000 for entry-level lawyers to $118,000 for the highest paid division chief, see Brief for State of Alabama et al. as Amici Curiae 10, and n. 3 (citing National Association of Attorneys General, Statistics on the Office of the Attorney General, Fiscal Year 2006, pp. 37-39). Section 1988 was enacted to ensure that civil rights plaintiffs are adequately represented, not to provide such a windfall.